## M. F. WHITEHURST v. S. D. YANDALL et al.

1. VENDOR'S LIEN. *Deed. Presumption.* Where land is sold and conveyed, and the whole or part of the purchase money remain unpaid, it is presumed that the vendor intends to retain a lien upon the conveyed premises for the unpaid purchase money.

   Cases cited: Campbell v. Baldwin, 2 Hum., 248; Marshall v. Christmas, 3 Hum., 616.

2. VENDOR'S LIEN. *Title bond.* But where the party selling real estate gives bond to make title when the purchase money is paid, the law regards the legal title as having been retained as absolute security for the purchase money; and it would require very strong evidence to establish that the vendee's right to an absolute conveyance, free from the vendor's lien, was dependent upon other or different conditions than the payment of the purchase money.

   Cases cited: Anthony v. Smith, 9 Hum., 508; 2 Heis., 401.

3. SAME. And the subsequent execution of a deed to the land does not waive the lien retained in the title bond.

   Case cited: 2 Heis., 159.

---

### FROM GIBSON.

---

Appeal from the Chancery Court. R. E. RAINES, Chancellor.

JONES & CARTHELL for complainant.

J. C. McDEAMAN for defendant.

DEADERICK, J., delivered the opinion of the court.

In September, 1870, the complainant sold to defendants, S. D. and W. W. Yandall, a tract of 1,113 acres of land, in Gibson county, for $10,000. At the

same time S. D. Yandall sold to defendant, J. R. S. Walker, a tract of land in said county for $4,500.

The purchase money for the tract sold to the Yandalls was payable 25th December, 1870, 1871, and 1872, and three notes of Walker, 1,500 each, were made payable to complainant, and the notes of the Yandalls were executed for the balance of the purchase money.

Complainant executed his bond for title, binding himself to the Yandalls to make a warrantee deed in payment of the several notes, the bond having recited as the consideration for the land the three several notes of the said Yandalls, and also the several notes of said J. R. S. Walker.

S. D. Yandall also bound himself to convey the tract sold to Walker when the notes to complainant were paid.

On the 23d December, 1871, the complainant executed his deed to the Yandalls for the tract of land of 1,113 acres, as recited in the deed, for the consideration of notes on Moore & Hutchison, endorsed by S. D. Yandall, and the three notes on Walker.

This bill is filed by the complainant in the Chancery Court at Trenton, claiming a lien upon the tract of land of 1,113 acres, sold by him to the Yandalls, and also upon the tract sold by Yandall to Walker, for the three notes of Walker which remain unpaid. The bill prays specifically for the sale of the land sold by complainant to the Yandalls, and for general relief.

Defendants S. D. & W. W. Yandall filed their

answer, and state that the Walker notes, amounting to $4,500, were taken as an absolute payment towards the land they bought, and that complainant was to look alone to Walker, and his lien upon the land sold to Walker, for their payment; that neither the said Yandals, nor their land, was to be liable for said Walker's notes, they baving been taken by complainant as an absolute payment upon the land.

The material question, therefore, in this case is, did the complainant relinquish his vendor's lien upon the land sold to the Yandall's, or has he the right to enforce such lien against the 1,113 acre tract sold by him to the Yandalls for the satisfaction of Walker's notes.

S. D. Yandall was examined as a witness, and states that he and W. W. Yandall bought the land of complainant at $10,000, with the understanding that he would take the Booth land, being the tract sold to Walker at $4,500, as that much paid on the land, and witness was to be in no way liable for Walker's notes. All witness agreed to do was to have a good title made for the land; that learning complainant was about to move to Kansas, and desiring to get a deed before he left, he made an arrangement to give Moore & Hutchison's notes for his and W. W. Yandall's, and complainant executed the deed. The notes of Moore & Hutchison have been in some way settled between the parties, and the only question arising in the case is in respect to the Walker notes.

S. D. Sandford states that the day the notes and title bonds were executed, he was present and heard.

S. D. Yandall say to complainant that he would not guarantee anything but the right to the land sold to Walker, and demanded and received from complainant a receipt for the amount paid on the land in the Walker notes; did not read the receipt. Witness stated that he did not hear all that passed between the parties; that he was out in the orchard part of the time; did not hear a fourth of what passed between complainant and Yandall.

W. H. Kellough states that he was called upon to draw the several title bonds and notes between complainants Yandalls and Walker. The first instrument he drew was the title bond from complainant to Yandalls, and while writing it, and at that part stating the consideration, complainant and Yandall got into a dispute, complainant insisting that Yandall should take the notes of Walker payable to himself, and endorse them to him, which Yandall refused to do. While they were still disputing, witness went out of the house and told them when they agreed to call him. In ten or fifteen minutes he was called back and finished the title bond and other instruments. When he left the house Walker, and one or two of complainant's sons, were in the house with complainant and Yandall.

M. F. Whitehurst states that Yandall insisted upon his taking the Walker notes as a payment on the land, but he refused to do so. Yandall then agreed that the notes should be a lien on the land sold him, and we completed the trade. Witness states he did not agree to receive the notes as a payment as money.

M. C. Whitehurst states that after Kellough and Sandford had gone out into the orchard or yard, Yandall wished his father to take the Walker notes payable to him, complainant, and complainant wanted them taken to Yandall and endorsed over, and it was finally agreed that the notes should be made payable to complainant, and a lien held upon the land sold to Yandall for their payment.

Walker states that Kellough and Sandford had walked out before the trade was closed, and it was closed in the presence of himself, Whitehurst, and his son, and complainant took his, witness', three notes in lieu of Yandall's notes; that he did not take them as so much money paid on the land, but the agreement was that Whitehurst was to hold a lien on the land he sold to Yandall until the said three notes executed by witness were paid.

Where land is sold and conveyed, and the whole or part of the purchase money remains unpaid, it is presumed that the vendor intends to retain a lien upon the conveyed premises for the unpaid purchase money: 2 Hum., 248; 3 Hum., 616. But where the party selling real estate gives bond to make title when the purchase money is paid, the law regards the legal title as having been retained as absolute security for the purchase money; and it would require very strong evidence to establish that the vendee's right to an absolute conveyance, free from the vendor's lien, was dependant upon other or different conditions than the payment of the purchase money: 9 Hum., 508; 2 Heis., 401.

Upon the testimony of the witnesses, without reference to the stipulations of the title bond, it does not appear that complainant, in taking the notes of Walker, received them as an absolute payment to the extent of their amount. When he and Yandall disagreed, during the preparation of the title bond by Kellough, he and Sandford left the room, and did not hear what transpired between the parties. They, with complainant's son and Walker, were left alone together, and during this time complainant, his son, and Walker, testify that the parties agreed that the Walker notes were to be a lien upon the land. Yandall contradicts these statements, and Kellough and Sandford state, when they left the room, Yandall said he would not agree to the trade unless complainant would take the Walker notes with the lien only on the land sold to Walker. They do not know what transpired in their absence, and when Kellough was called back he finished the writing of the title bond. The stipulations of the bond are in precise conformity with agreement as insisted upon by complainant. It does provide that he is not to make the title to the land until "the several notes" were paid; the previous part of the bond having recited the "several notes of Yandall," and "also Jas. R. S. Walker's several notes" as the consideration.

There was then no waiver or relinquishment of the vendor's lien by any recital in the bond, on the contrary, it is expressly reserved. And the weight of the evidence supports the recitals of the bond.

Was there, then, any waiver of the lien reserved

for the payment of the Walker notes at the time of the execution of the deed on 23d December, 1871. The vendor was about removing to a distant State, and the proof shows the reason for executing the deed was to avoid the difficulty and inconvenience of procuring a conveyance, after the removal of the vendor. There is no pretence that the deed was executed, because the purchase money had been paid since the execution of the title bond. None of it was then due except the first payment, and none of Walker's notes had been paid. The lien then was still subsisting when the deed was executed, and continued thereafter, unless something was done by the vendor to waive it. The deed receites the consideration of the conveyance to be several notes on Moore & Hutchison, and three notes on J. R. S. Walker for forty-four (five) hundred dollars.

When the deed was executed the proof does not show that there was any new agreement as to the Walker notes. They were recited in the title bond as part consideration of the land, when the lien for their payment was expressly retained. In the deed they are also recited as having been received as part consideration of the land, but there is no where any proof at this time of any express waiver or act amounting to waiver of the lien for their payment.

The taking of the deed does not waive the lien retained in the title bond: 2 Heis., 159.

We are of opinion, therefore, that the decree of the Chancellor, declaring that the complainant had no lien on the land sold to Yandall for the amount of

the Walker notes, is erroneous, and the same will be reversed to that extent, and a decree rendered here directing a sale of the Walker tract, in the first instance, for the purchase money due from Walker, and if the Booth tract sold to Walker shall not bring an amount sufficient to pay the balance due to complainant, then the tract sold to Yandall, or so much thereof as may be sufficient for that purpose, shall be sold for the payment of any unsatisfied balance.

The costs will be paid out of proceeds. of sale of the land.